## JONATHAN B. SIMONDS & another *vs.* JOSHUA SIMONDS & others.

A testator, having two sons, George and Albert, devised an estate to trustees to take and apply the income for the use of his son George and on his death for his children; but should he leave no children, then to apply the income for the benefit of the testator's son Albert during his life, the surplus to be invested and allowed to accumulate. He further devised an estate to trustees to take and apply the income for the support of his son Albert during his life, and provided that if this income should be insufficient, the trustees should take from the income of the other estate a sum, not, however, exceeding one half the income, sufficient to supply the deficiency. He further provided that on the death of Albert the property devised for his use and benefit should go to his children if he left issue, otherwise to George, and in case of the death of George then to his children and their issue, should he leave any; but in case both George and Albert died without issue, then both estates should be divided among his nephews and nieces, children of certain of his brothers and sisters who were named in the will, for life, and after their decease to be equally divided among their children. Albert died without issue before George, who also died without issue. A portion of the estate devised to the use of George was taken to widen a street, and damages awarded therefor. *Held,* that George took an estate for life in the estate devised for his use, and either an estate for life or a base fee determinable upon the event of his dying without issue in the estate devised for the use of Albert; that the limitation over to the nephews and nieces was not void for remoteness, and took effect upon the death of George; that the widow of George was not entitled to dower; that the sum awarded as damages was to be regarded at real estate, and did not pass to the administratrix of George; that the children of a sister of the testator, who was not named in the will, were not entitled to share with the other nephews and nieces; and that upon the death of George the trust terminated, and the nephews and nieces became entitled to the possession.

A testator devised an estate to trustees to take the income for the use of his son George W. "until he arrives at the age of forty years, and on his attaining that age or should die without issue, then to the use of said George W. and his heirs." *Held,* that the trust terminated upon the arrival of George at forty years of age.

BILL IN EQUITY filed June 13, 1871, by Jonathan B. Simonds and George W. Simonds, trustees under the will of Jonathan Simonds against the nephews and nieces of the testator, praying for instructions. The case as it appeared upon the bill and answers, on which it was reserved by *Morton,* J., for the consideration of the full court, was as follows:

The will was proved in February, 1835. At the time of his death the testator had two children, George W. Simonds and Albert Simonds, both of whom were unmarried and childless, and one of whom (Albert) was insane. At that time were also living Joshua Simonds and William Simonds, brothers of the tes-

tator, and Martha Merriam, Elizabeth Parker, and Hannah S. Robbins, his sisters. The sister Hannah S. Robbins was not mentioned in the will. Since the probate of the will these brothers and sisters had all died, leaving children and grandchildren, who were made parties to this suit. The testator's son Albert died before the filing of the bill, unmarried, and never having had children, and having continued insane till the time of his death. The son, George W. was born in 1820, was married in 1862, and died after the bill was filed, he also never having had children. By amendment his widow and administratrix, Anna M. Simonds, was made a party to the suit.

A portion of the estate devised by the fourth clause of the will had been taken by the city of Boston for the purpose of widening Eliot Street, and the sum of about $8000 had been awarded as damages therefor.

The material portions of the will were as follows :

" Third, my will is, I give and bequeath, direct and appoint unto Franklin Simonds, Jonathan B. Simonds, and Jonathan S. Parker, my nephews, and to the survivor and his heirs forever, my mansion house, where I now live, and store on Washington Street, being number 377 ; nevertheless to hold in trust for the following intents and purposes, and none other ; that is to say, to take and receive the rents and income of the same, and after deducting repairs and paying insurance, the residue to be employed at the discretion of my said trustees, for the use and benefit of my son George W. Simonds, during his natural life, and on his death to his children. But my will is, that after my son arrives at twenty-one years no allowance shall be made to said trustees for their services, if he is capable to take charge of the estate ; and I direct that he be thenceforward employed to collect the rents. My will however is, that the said trustees should continue their superintendence and give advice after my son comes of full age, should he survive so long; but should he die and leave no children or descendants of children, I order that the income of the same estate shall be received and taken by my trustees above mentioned, and applied for the benefit of my son Albert Simonds, during his natural life ; and the surplus over

and above what may be necessary for the support of my said son Albert shall be put out at interest on mortgage, or invested in bank stock of some incorporated bank in Boston, and allowed to accumulate. And if my said son Albert should become capable, in the opinion of said trustees, of transacting business, then I direct the whole of said income to be paid over to him annually during his lifetime.

"Fourth, I give, bequeath, limit, and appoint unto Franklin Simonds, Jonathan B. Simonds, and my son George W. Simonds, and their heirs, and to the survivor of them and his heirs forever, the estate at the corner of Warren and Eliot streets, formerly the property of John Trask, deceased; but nevertheless in trust for the following intents and purposes, and none other; that is to say, to take and apply the income of the same for the support of my son Albert Simonds, during his natural life. . . . . And should it so happen that the income of said estate should be unavoidably lost or so far diminished in amount as not to leave enough for the comfortable support and maintenance of my said son Albert, with the other provisions I have herein made for him, then I direct my said trustees to take from time to time out of the income of the other property a sum sufficient for that purpose, so that not more than one half of the property devised for my son George W. shall be appropriated to make up such deficiency.

"Fifth, I give, bequeath, limit, and appoint unto Franklin Simonds, Jonathan B. Simonds, and Jonathan S. Parker, and the survivor of them and his heirs forever, my house in Charter Street and another abutting on Goodrich Alley, with the land under and belonging to the same; nevertheless to hold the same in trust for the following intents and purposes, and none other; that is to say, to take and receive the rents and income of the same for the use and benefit of my son George W. Simonds until he arrives at the age of forty years, and on his attaining that age, or should die leaving issue, then to the use of said George W. and his heirs, unless said premises should be destroyed by fire; then my will is, that the trustees above mentioned do sell the land and make suitable deeds for the conveyance thereof, and

place the proceeds in the Massachusetts Hospital Life Insurance Company as a deposit in trust, the interest or income thereof to be applied for the use of my sons George W. and Albert in equal shares, the income of Albert's share to be appropriated by said trustees or his guardian for his use during his natural life. . . . .

" Eighth, I give and devise to the said Franklin and Jonathan B. Simonds and Jonathan S. Parker, and to the survivor of them and the heirs of such survivor, my estate in Chambers Street, formerly Wiltshire Street ; in trust, nevertheless, for the following purposes, and none other ; that is to say, I authorize them to make sale thereof, should it be deemed advisable, eithei by auction or otherwise, for the best price which can be obtained therefor ; and said trustees are to make suitable deed or deeds of conveyance thereof, and place the proceeds on interest in a good mortgage with a policy of insurance against fire, or take a mortgage on the same estate upon condition that the said mort-gage can lay two years, the interest to be paid annually, and on further condition that the purchaser erect a good store of brick or dwelling-house of brick, and the trustees aforesaid keep the amount of the mortgage insured at his expense, and the income of said premises or the interest of the proceeds thereof to be ap-propriated as in the third clause of this my will. . . . .

" Fifteenth, I give unto my son George W. Simonds, my nephews Franklin Simonds and Jonathan B. Simonds and to the survivor of them and his heirs, one undivided half of my farm in Lexington ; nevertheless to hold in trust for the following purposes ; that is to say, to apply the income of the same to the support of my son Albert, in addition to what I have already given him. . . . . The other undivided half of my farm in Lex-ington I give to Eli Simonds, son of my brother William Si-monds, and to his heirs, on the following conditions : that he carry on the whole farm in a husband-like manner at the halves ; and, after payment of all taxes, one half of the annual income of the said farm to be paid over to the trustees or guardian of my son Albert for his sole use and benefit ; . . . . and in case the said Eli decease before he arrives at the age of twenty-one years, then I do hereby devise that part of the farm intended for

the said Eli to Cyrus Simonds, son of my brother William Simonds, and to the heirs of said Cyrus, under the same regulations, restrictions, and upon the same conditions as are pointed out in respect to said Eli, and no part of the income of said farm is to go to either the said Eli Simonds or the said Cyrus Simonds until after he arrives at the age of twenty-one years, or until after the probate of my will and upon his election to take the farm on the conditions aforesaid. In case either said Eli or Cyrus shall refuse to take said farm on the conditions aforesaid, then the same shall be carried on by said trustees for the benefit of my said son Albert, and on his death my will is that all the property that I have devised for his use and benefit shall go to his children, if he shall be restored to his mind and be married and leave issue, otherwise the same shall go to my son George W. Simonds, and in case of his death, to his children and their issue should he leave any. But in case both my son George W. and Albert should die without issue, my will is, that all the residue of my real estate hereinbefore limited, appointed, and devised, and all my other estate real and personal, be divided among my nephews and nieces as follows : to wit, the children of my brother Joshua, my brother William, my sister Martha Merriam, and my sister Elizabeth Parker during their natural lives, and after their decease to be equally divided among their children or their legal representatives."

*J. O. Teele,* for Jonathan B. Simonds.

*J. L. Stackpole,* for Anna M. Simonds.

*T. M. Stetson,* for the children of Martha Merriam.

*S. E. Sewall,* for the children of Hannah S. Robbins.

MORTON, J. The plaintiffs seek the instruction of the court as to their duties as trustees under the will of Jonathan Simonds. When the will was made, and at the death of the testator, his only children were two sons, both of whom were childless. The general scheme and purpose of the testator, apparent from the will, was to divide the bulk of his estate into two parts, to give the use and income of one part to each of his sons during his life, and at his death to give such part to his issue should he leave any ; but if both sons should die without issue, then to

give the whole estate to the nephews and nieces named in the residuary clause for their lives, and upon their death to their issue. To carry this purpose into effect, the two parts were devised to trustees. The third clause devises to the trustees the estate on Washington Street, in trust, " to take and receive the rents and income of the same, and, after deducting repairs and paying insurance, the residue to be employed at the discretion of my said trustees, for the use and benefit of my son George W. Simonds, during his natural life, and on his death to his children." The fifteenth clause provides, that if both the sons should die without issue, all the estate devised for their benefit shall be divided among certain nephews and nieces " during their natural lives, and after their decease to be equally divided among their children or their legal representatives."

It is contended that this gave George an estate tail; but we think such a construction would defeat the intentions of the testator. The third clause further provides, that should George die, leaving no children or descendants of children, the income is to be applied to the use of Albert during his life, so far as necessary, and the balance to be invested and allowed to accumulate. The fourth clause devises certain real estate to the trustees for the use of Albert, an insane son, and provides that, if the income shall be insufficient for his comfortable support, the trustees are to take out of the income of the estate devised for the benefit of George a sum " sufficient for that purpose, so that not more than one half of the property devised for my son George W. shall be appropriated to make up such deficiency."

These provisions of the will show that it was the intention of the testator to give George merely an estate for life, and not a larger estate with the power of alienation.

The same considerations apply to the estate devised by the eighth clause of the will.

Albert having died without issue, before George, the next question raised is, what estate did George take in the estates devised to the trustees for the benefit of Albert? It is clear that the testator intended to give Albert an estate for life in the estates devised by the fourth and fifteenth clauses of the will.

The fifteenth clause provides that on the death of Albert, " my will is that all the property I have devised for his use and benefit should go to his children, if he shall be restored to his mind and be married and leave issue, otherwise the same shall go to my son George W. Simonds, and in case of his death to his children and their issue should he leave any. But in case both my son George W. and Albert should die without issue, my will is, that all the residue of my real estate hereinbefore limited, appointed, and devised, and all my other estate, real and personal, be divided among my nephews and nieces as follows, to wit, the children of my brother Joshua, my brother William, my sister Martha Merriam, and my sister Elizabeth Parker, during their natural lives, and after their decease to be ·equally divided among their children or their legal representatives."

It seems clear that it was not the intention of the testator, by this clause, to give to George either an estate in fee simple or an estate tail. Either estate involves the power of alienating the fee, and thus entirely defeating the limitation over to his nephews and nieces. Construing this provision in view of the general scope and scheme of the will, we are inclined to think that it gave George an estate for life merely ; but whether it gave him a life estate, or a base or qualified fee determinable upon the event of his dying without issue, is immaterial upon either theory; in the contingency which has happened, the effect would be the same, and the limitation over to the nephews and nieces would take effect upon the death of George, unless it be void for remoteness.

The next question is whether the devise over to the nephews and nieces can, consistently with the rules of law, take effect according to the terms of the will, or whether it is void as creating a perpetuity. This is a limitation over, not upon an indefinite failure of issue, but upon a definite failure of issue at the death of George. It presents the case of a devise to George of a life estate or a base fee, and at his death without issue, a limitation over to the nephews and nieces for their lives, and upon the limitation over upon their death to their children or legal representatives. The same question arose in *Lovering* v. *Worthington,*

106 Mass. 86. For the reasons stated in that case, it is clear that the limitation in this will of a life estate to the testator's nephews and nieces is not void for remoteness. What may be the rights of their children or legal representatives, upon their death, cannot now be decided.

As to the estate in Charter Street, devised by the fifth clause to the trustees, " to take and receive the rents and income of the same for the use and benefit of my son George W. Simonds, until he arrives at the age of forty years, and on his attaining that age, or should die without issue, then to the use of said George W. and his heirs," we are of opinion that the trust terminated upon the arrival of George at forty years of age, and no further instructions to the trustees are required or can be given under this will.

As the title to the real estate in question was in the trustees, and George had no legal seisin, the claim of his widow to dower cannot be sustained. *Reed* v. *Whitney*, 7 Gray, 533. *Lobdell* v. *Hayes*, 4 Allen, 187. *Loring* v. *Blake*, 98 Mass. 253.

We are of opinion that the sum awarded by the city of Boston as damages for a portion of the Warren Street estate taken for public use, must be regarded as real estate for the purposes of the trust. The legal title to the land taken was in the trustees; the taking it by the city cannot change the rights of the parties. It is merely a change of the trust securities, and the sum awarded in damages is to be treated as the real estate would be in the place of which it stands. The claim, therefore, that it passed to the administratrix of George cannot be sustained.

It seems to us also clear that the claim of the children of Hannah S. Robbins cannot be sustained. The devise in the fifteenth clause is not to all the testator's nephews and nieces. He specifies by name his brothers and sisters whose children are intended to be the objects of his bounty. It is a devise to a class, but the description of the class does not include, but plainly excludes, the children of his sister, Mrs. Robbins. *Tucker* v. *Boston*, 18 Pick. 162.

We are of opinion that upon the death of George W. Simonds the trust terminated by the operation of the will. No provision

is made for the continuance of the trust after the death of the two sons of the testator ; but upon their death without issue, the estates, not the income, are to be divided among the nephews and nieces. We think, therefore, that upon the death of George the trust ceased, and the nephews and nieces became entitled to the possession of the estates, real and personal, under the fifteenth clause of the will. *Decree accordingly.*