# STASER v. GAAR, SCOTT & CO. ET AL.

[No. 20,944. Filed November 27, 1906. Rehearing denied February 6, 1907.]

1. PARTITION. — *Judicial Sales.* — *Husband's Creditors.* — *Wife's Rights.* — *Parties.* — *Estoppel.*—Where a wife files a cross-complaint, after the sale of her husband's interest in land in a suit for partition, praying that she be given, as against the husband's creditors, out of the proceeds in the commissioner's hands, her inchoate marital interest, she is estopped from claiming that she was a necessary party to the suit for partition, and it will be assumed that the complete title was transmitted by the sale. p. 134.

Staser *v.* Gaar, Scott & Co.—168 Ind. 131.

2. HUSBAND AND WIFE. — *Dower.* — *Descent and Distribution.* — The marital right of the widow is highly favored in law, since it is a moral, legal and equitable right.   p. 135.

3. STATUTES.—*Construction.*—*Dower.*—*Descent and Distribution.* —Statutes guarding or amplifying the marital rights of the widow are liberally construed in her favor.   p. 135.

4. CONTRACTS.—*Consideration.*—*Husband and Wife.*—Marriage is a valuable consideration; and the wife is regarded, so far as she receives property by virtue thereof, as a purchaser for a valuable consideration.   p. 136.

5. HUSBAND AND WIFE. — *Inchoate Rights.*—*Protection of.*—The wife's inchoate right in her husband's land is more than a mere possibility; and it may be protected by the courts.   p. 136.

6. MORTGAGES. — *Wife's Inchoate Rights.* — *Protection of.* — The courts, on the foreclosure of a mortgage on the husband's land, will protect, by appropriate order, the wife's inchoate rights therein, as given by §2669 Burns 1901, §2508 R. S. 1881, vesting in the wife her inchoate rights in her husband's land sold at judicial sale for the payment of his debts.   p. 136.

7. SAME.—*Foreclosure.*—*Rights of Wife as against Creditors.*— The wife is entitled, as against general creditors, under §2669 Burns 1901, §2508 R. S. 1881, to her third of the proceeds of the sale of her husband's lands sold under foreclosure of a mortgage executed by the husband and herself.   p. 137.

8. PARTITION.—*Creditors.*—*Wife's Inchoate Rights.*—Under §2669 Burns 1901, §2508 R. S. 1881, the wife is entitled, as against her husband's creditors, to her third of the proceeds, belonging to the husband, of a sale of the husband's land in partition, such sale being involuntary as to her.   p. 137.

9. CONVERSION. — *Equitable.* — *Real Property.* — *Personalty.* — Equitable conversion consists in treating property as if the equity has been worked out, and as impressed with its then character; and where real estate has been converted into money by compulsory process, it will be treated, so far as the interested parties are concerned, as if it were real estate.   p. 138.

From Vanderburgh Circuit Court; *Louis O. Rasch,* Judge.

Cross-complaint by Anna Staser against Gaar, Scott & Co. and others.   From a decree for cross-defendants, cross-

complainant appeals. Transferred from Appellate Court (see 38 Ind. App. 696) under subd. 1, §1337j Burns 1901, Acts 1901, p. 565, §10. *Reversed.*

*G. V. Menzies* and *Spencer & Brill,* for appellant.

*Ireland & Reister,* for appellees.

GILLETT, J.—This case has been transferred to this court by the second division of the Appellate Court, with the recommendation that *Haggerty* v. *Wagner* (1897), 148 Ind. 625, 39 L. R. A. 384, be overruled.

The errors assigned by appellant are based on the sustaining of demurrers to her respective cross-complaints against appellees, Gaar, Scott & Co. and Abiah Martin.

The facts in the case, as revealed by said cross-complaints and the record of the proceeding wherein they were filed, are as follows: Appellant and Louis C. Staser are, and for more than thirty years have been, husband and wife. June 27, 1902, said Louis C. Staser, being the owner of an undivided interest in real estate in Vanderburgh county, joined with certain of his cotenants in the institution of a a suit against his remaining cotenants to obtain a sale of said real estate, alleging that it was indivisible. Such proceedings were afterwards had that November 3, 1904, a decree was entered fixing the interest of the parties and ordering the land sold by a commissioner. January 3, 1905, the commissioner reported a sale of the real estate, which sale was on said day approved and the commissioner ordered to execute a deed. October 1, 1903, appellee Gaar, Scott & Co. recovered a judgment against said Louis Staser for $1,669.73, and on November 18, 1904, appellee Martin obtained a judgment against said Louis Staser for $52.50. Subsequent to the confirmation of the sale, said appellees filed intervening petitions in said proceeding, by which they respectively sought to have the fund in the hands of such commissioner, so far as it belonged to said Louis C. Staser, subjected to the payment of their respective judgments. At this stage appellant filed a petition to be made a party,

and, upon being admitted as such, she filed said cross-complaints, asking to have fixed and determined her right as wife in and to the proceeds of said real estate, and that such right be decreed superior to those of said creditors.

In *Haggerty* v. *Wagner, supra,* the question involved was whether a decree of sale on partition, in a suit to which the husband, as one of the cotenants, was a party, was sufficient to bar the wife upon the death of her husband, she not having been a party to said suit. The substance of the holding was that she was not a necessary party, as the partition statute directs that "the moneys arising from such sale, after payment of just costs and expenses, shall be paid by such commissioner to the persons entitled thereto, according to their respective shares" (§1218 Burns 1901, §1204 R. S. 1881), and that therefore she had no interest which she could protect by an appearance. Appellant's cross-complaints in this action, as will be observed, were not based on the theory that the sale did not divest her of all interest in the land. On the contrary, it may be said that they proceed on the theory that her interest was divested by the sale, as held in the case of *Haggarty* v. *Wagner, supra,* but that, since the value of her interest went to augment the proceeds in the hands of the commissioner, she was entitled as against her husband's creditors to assert her right against the fund. It is obvious, therefore, that she cannot succeed on the theory that her interest in the real estate did not pass, and therefore she is thoroughly committed to the theory that the case of *Haggarty* v. *Wagner, supra,* was correctly decided. We can only assume, since the holding in that case, that the statute of 1875, to which we shall hereafter advert, did not apply to partition sales, was the declared law of this State during the pendency of the partition proceeding in question, and as the parties thereto evidently proceeded under the supposition that such declaration was the law, that the purchaser bid

on the theory that he would acquire the wife's interest, so that in fact the fund was thereby proportionately increased. Appellee Martin has not filed a brief in the case, while appellee Gaar, Scott & Co. makes no question upon the proposition that appellee's interest in the real estate has passed, but, on the contrary, insists that under the case of *Haggarty* v. *Wagner, supra,* the whole proceeds of the husband's share belongs to it. So we apprehend that, upon the posture of the case, and in view of the fact that the question has been decided by this court, we may well assume that appellant's inchoate interest has gone into the proceeds of the sale. This, therefore, being a case in which no party to the record has a standing to insist that said former case was decided wrong, we assume its correctness, and proceed to the consideration of the question of whether appellant is entitled to assert an interest in the augmented fund as against her husband's creditors.

The marital right of a widow in the real estate of her deceased husband, being an extension of common-law dower, is highly favored. According to the maxim, the

2. three things favored in law are life, liberty, and dower. The right of a widow to maintenance out of her deceased husband's estate is so generally recognized where the common law obtains that it is regarded as one of the institutions of the state, and, as it rests on moral, equitable and legal right, it may be the main-spring of some of the strongest equities. 1 Story, Eq. Jurisp. (13th ed.), §§628-630; *Crawford* v. *Hazelrigg* (1889), 117 Ind. 63, 2 L. R. A. 139. This tenderness of the law for the sustenance of the widow has also prompted this court to

3. regard as beneficent, and entitled to a liberal interpretation, legislation which is designed to guard or even amplify the right of the wife in her husband's real estate. *Lawson* v. *DeBolt* (1881), 78 Ind. 563; *Straughan* v. *White* (1882), 88 Ind. 242; *Mansur* v. *Hinkson* (1884), 94 Ind. 395. "Marriage is a valuable consideration, and

a married woman is regarded as a purchaser for a
4. valuable consideration of all property which accrues
    to her by virtue of her marriage." *Derry* v. *Derry*
(1881), 74 Ind. 560. See, also, *Richardson* v. *Schultz*
(1884), 98 Ind. 429.

By section one of the act of 1875 (Acts 1875, p. 178, §2669 Burns 1901, §2508 R. S. 1881), it is provided (subject to certain exceptions which need not be here considered) that in case of a judicial sale of real property in which a married woman has, by virtue of her marriage, an inchoate right that is not directed by the judgment to be barred or sold, her right shall become absolute and choate whenever the legal title of the husband shall become absolute and vested in the purchaser.

The inchoate interest of the wife is more than a mere possibility under the laws of this State. Although peculiar in its character, it for many purposes approx-
·5. imates an actual, even if it be a contingent, interest
    in the lands of her husband. An inchoate right of
dower has been recognized as a subject of judicial protection in some circumstances (14 Cyc. Law and Proc., 926, and cases cited), and since the enactment of the statute of 1875, *supra,* there has been no hesitancy on the part of this court in recognizing the wife's right to protection
6. as against creditors, even where her application
    was made in advance of the time of the vesting of
title in the purchaser. Thus, on the foreclosure of a mortgage to secure the husband's debt, where she had joined in the mortgage for the purpose of barring her inchoate interest, it has been many times declared that she possesses the equity of a surety to procure an order that the interest of the principal debtor should first be offered for sale. *Leary* v. *Shaffer* (1881), 79 Ind. 567; *Grave* v. *Bunch* (1882), 83 Ind. 4; *Main* v. *Ginthert* (1883), 92 Ind. 180; *Trentham* v. *Eldridge* (1884), 98 Ind. 525; *Pur-*

*viance* v. *Emley* (1891), 126 Ind. 419; *Smith* v. *Sparks* (1904), 162 Ind. 270.

It was held by this court in *Clements* v. *Davis* (1900), 155 Ind. 624, that where there was a decree foreclosing a mortgage as against a husband and wife, she having joined him in the mortgage, and in which proceeding certain judgment creditors, without the formation of an issue between them and the wife, had procured an order that they be paid out of the proceeds after the satisfaction of the mortgage decree, she was entitled to demand that the surplus arising from the sale after the payment of the mortgage decree and costs should go to her, so far as necessary, in satisfaction of her right under the statute of 1875. In *Purviance* v. *Emley, supra,* this court held that where a wife had procured an order on foreclosure that her husband's two-thirds interest should first be offered for sale,-but where, the two-thirds interest not bringing enough, the whole was sold, producing an overplus, the wife was entitled, as against a judgment creditor, who sought to reach the balance in the hands of the clerk, to one-third of the amount the land sold for. These cases go a long way toward the solution of the question in hand. While we recognize the fact that for some purposes there may be a difference as to the character of the proceeds between a sale which is involuntary, so far as the owner is concerned, and one in which the very purpose on the part of the owner in instituting the suit is to turn the land into money, yet the proceeding in this case, being involuntary as to the wife, and there being an attempt on the part of creditors to break into the essential unity of the suit, and convert it into a process of execution, it is our opinion that she is entitled as against them to one-third of her husband's share of the proceeds. Her marital right has been converted into money, and while it may be that her husband would be authorized, by virtue of the partition statute, to draw out his whole share of the

fund, yet general creditors, who are without special equi-
ties, are not entitled, by reason merely of the fact that they
have omitted to make themselves parties before the sale,
to obtain her interest. What they could not do directly
they cannot accomplish by indirection, particularly in
equity. It is a settled rule, as was declared in *Jewett* v.
*Feldheiser* (1903), 68 Ohio St. 523, "that a judgment
creditor of the husband only has no claim upon the wife's
dower interest and cannot, by any process, subject it to his
debt."

The right of the wife in such a case as this is secured by
treating the proceeds of her husband's interest as real es-
tate, under the doctrine of equitable conversion.

9. By virtue of this doctrine, a court of chancery, act-
ing under the maxim that "what ought to be done
is considered in equity as done," will, where it is necessary,
enforce an equity in favor of a party by treating the sub-
ject-matter as if the equity had been worked out, and as
impressed with the character which it would have then
borne. Adams, Equity (8th ed.), *135; 9 Cyc. Law and
Proc., 825. The question here is not as between the im-
mediate parties to the partition proceeding, nor as between
the husband and his creditors, but it is a case in which the
predominant equity of the wife comes in conflict with the
claims of general creditors, who, as before observed, are
without any special equity. In such a case we do not doubt
that the court should protect the interest of the wife.

The general rule of equitable conversion is that, where
there has been a compulsory conversion of real estate into
money, it will be treated as real estate until the person
authorized to draw it elects to accept it in that form. 3
Pomeroy, Eq. Jurisp. (2d ed.), §1167. Here, the devolu-
tion of the property was involuntary, so far as the wife was
concerned, and, in the circumstances, with the wife and
judgment creditors contending over the proceeds, we can-
not doubt that it was the duty of the court, for the purpose

of securing to her the rights given by statute, to treat the fund, which it will be observed that such creditors were seeking to appropriate by an order amounting to an equitable execution, as subject to the equity of the wife to the same extent as if such proceeds were real estate. See *Whitmore & Kendall* v. *Rascoe* (1903), 112 Tenn. 621, 85 S. W. 860. It is within the power of the court to compel a party who seeks equitable relief to do equity, and the power of a court of chancery to reach a right result is not abridged because it finds that by the act of third parties there has been a devolution of the subject-matter from real to personal property. Where there is an equity which can only be protected by creating a charge upon the proceeds of a sale, a court of equity will treat the money as affected by the same equitable rights as if it had remained specifically real estate. *Oxenden* v. *Compton* (1793), 2 Ves., Jr., *69; *Holland* v. *Craft* (1855), 3 Gray 162, 180; *In re Chapin* (1889), 148 Mass. 588, 20 N. E. 195, 2 L. R. A. 768. It was by the voluntary action of the creditors that they sought by their intervening petition, in effect, to convert an ordinary partition sale into a judicial sale for the payment of the husband's debts, and, under the liberal interpretation which has been given to the statute of 1875, *supra,* we perceive no reason why the wife may not, as against them, successfully follow the proceeds in the hands of the commissioner, for the purpose of securing her marital rights. In fact, it may be said that in the wife's effort to have the proceeds treated as real estate, she occupied a position analogous to that of said creditors, for they had no right to secure payment on a mere petition except on the theory that, being bound by the partition proceedings, as their judgments were recovered *pendente lite,* they ought to be permitted in equity, as against the husband, to have the proceeds treated as land.

The judgment is reversed, with a direction to overrule the demurrers to appellant's cross-complaints.